IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

JEFFREY DAVIES,                        )
                                       )
            Petitioner,                )
                                       )
vs.                                    )          Case No. 14-6117-CV-SJ-ODS
                                       )
RONDA J. PASH, Warden,                 )
Crossroads Correctional Center,        )
                                       )
            Respondent.                )

<u>ORDER AND OPINION (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS,
(2) DENYING ISSUANCE OF CERTIFICATE OF APPEALABILITY,
AND (3) DISMISSING MATTER WITH PREJUDICE</u>

Pending is Petitioner Jeffrey Davies's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Doc. #1. The Court denies the Petition, and declines to issue a Certificate of Appealability.


## I.     **BACKGROUND**

The underlying facts were summarized by the Missouri Court of Appeals:[1]

In 2005, the Buchanan County sheriff's department instituted a sting operation whereby the police department with the help of college interns would attempt to catch individuals who would meet underage children on the internet and attempt to meet them in person for sexual purposes. The department used the college interns as decoys who would converse with the would-be perpetrators online until a meeting was arranged.

In June 2006, intern Rachel Schellenberger created a fictitious profile on Yahoo called i_love_candy_92 under the name of "Jaime Jacobs" ("Jaime"). On June 6, 2006, Davies, a twenty-eight year old man, logged in as civil200077 and began chatting with "Jaime" in a chat room named "Toy Box."[2] Davies and "Jaime" chatted on a total of four occasions: June 6, 7, 8, and 12. "Jaime's" fictitious profile had her living in St. Joseph, Missouri, and "Jaime" first communicated to Davies that she

---

[1] Footnotes appearing in the fact section were taken directly from the decision of the Missouri Court of Appeals.
[2] This chat room was devoted to adult oriented sex toys.

was fourteen years of age and then subsequently in the same conversation changed her age to thirteen years old.

During the first chat between Davies and "Jaime" on June 6, 2006, Davies told "Jaime" she was too young for him, but he then began discussing sexually explicit topics with her such as: whether she was bisexual, her sexual history, masturbation, oral sex, pubic hair, avoiding pregnancy, anal sex, and the type of panties she wears. Davies also told "Jaime" the conversation was making him "horny," and he asked multiple times on what street she resided.

The second conversation was on June 7, 2006. Davies contacted "Jaime" and offered that if he were in St. Joseph they could hang out, and he asked her whether she would date him if he were younger. Davies asked "Jaime" what she was wearing and whether she was wearing panties and a bra. Davies then inquired as to whether "Jaime" shaves her legs and pubic hair. Finally, Davies told "Jaime," "if you want to learn, we still might be able to mess around sometime."

The third conversation was on June 8, 2006. In that conversation, Davies asked whether he could come over and meet "Jaime" at some time. He attempted to get "Jaime" to tell him her address but she refused. Davies insisted that "Jaime" had nothing to worry about; no one would see him; and if someone came home, he would run out the back door. Davies then attempted to get "Jaime's" telephone number. "Jaime" suggested the two could meet somewhere close to her home, but they did not plan a meeting that day. Instead, they made plans to chat again later.

The fourth conversation was on June 12, 2006. In that conversation, Davies asked why "Jaime" did not have a boyfriend and how many boys she had kissed. He again attempted to get "Jaime's" photo, address, and phone number. Davies then asked "Jaime" whether she wanted to meet up that night when he returned from Kansas City.

At this point in the conversation, Davies logged out of the screen name he had been using during the previous conversations and logged back in as saintjoe_guy64506.[3] Davies, as saintjoe_guy64506 contacted "Jaime," telling her he was a seventeen year-old male from St. Joseph, Missouri. "Jaime" informed Davies that she was thirteen years old. Davies asked "Jaime" what she looked like and suggested that they meet up sometime. Davies asked where "Jaime" lived and inquired into her sexual history. They discussed "Jaime's" relationship with Davies's other online person, civil200077, and he asked her whether she would have sex with civil200077. He discussed safe sex and condoms with "Jaime," pubic

---

[3] It was discovered that Davies was behind both online personas after the conversations but before the two were supposed to meet by Trooper Brad Ussary pursuant to a subpoena of the Internet Service Provider and Hotmail records.

hair, and offered to teach her how to have sex. He told her in graphic terms that he would teach her how to perform oral sex on a man and offered to perform oral sex on her. Also, he told her about anal sex and propositioned her. Davies then arranged to meet with "Jaime" that evening at 6:00 in the Meierhoffer Cemetery. He told her they could "do some sexual stuff in [his] car." Davies told her it would be easier if she wore a skirt. He told her they would have oral sex, fingering, kissing, and could try anal sex if she wanted. Then he suggested they could have sex without a condom but then decided that since she was in a fertile state they should use a condom. He told her he really likes thongs and offered to bring her one. This concluded Davies's conversation with "Jaime" as seventeen year-old saintjoe_guy64506.

Davies then logged back into the chat as civil200077 and contacted "Jaime" again. He asked "Jaime" what she had been doing, and "Jaime" informed him that she had been chatting with a new guy on the internet and that she would not be able to meet up with Davies (as civil200077) that evening. Davies inquired as to what "Jaime" would be wearing that evening and offered her advice. He tried to get "Jaime" to tell him exactly what she would be doing when she met up with her other on-line friend, asking her in graphic terms if she was going to perform oral sex on him, whether she would French kiss him and let him perform oral sex on her. This concluded the interactions between Davies and "Jaime" on the internet.

Trooper Brad Ussary and his partner Corporal Roger Phillips set up surveillance at Meierhoffer Cemetery that evening. The surveillance team observed a car matching the description given by Davies to "Jaime" drive slowly past the area where he had agreed to meet "Jaime." The investigators stopped Davies's car and inquired as to what Davies was doing in the cemetery. Davies said he was looking to see whether the tombstones were flat or upright. Davies was then given his *Miranda* warnings. Investigators again asked Davies what he was doing, and he replied he wanted to "see what residence the little girl came out of so that he could tell her parents what she was doing." Davies signed a consent form which authorized a search of Davies's vehicle. Davies then accompanied investigators to the police station.

At the police station, Davies waived his *Miranda* rights in writing. He was shown the printouts from each of the chats he had with "Jaime," and Davies initialed each chat transcript, signaling that "he agreed with what was on it as far as his recollection of what was said." He admitted to participating in the chats and broke down in tears saying he would cooperate fully. Davies then made a handwritten statement in the form of an apology letter, as this is what was requested by the officer. In this statement, Davies admitted that he changed profiles from civil200077 to

3

stjoe_guy64506 [sic] because he hoped she would meet someone who was 17 years old as opposed to 28 years old under his previous profile.

Davies telephoned his wife while at the police station and informed her that he had been arrested for soliciting a minor on the internet. She hung up on him, and he called her back a few hours later. She asked how old the minor was and he told her she was thirteen. The following day, after Davies was released, he and his wife had another conversation about the incident where Davies repeated that the minor was thirteen years old.[4] Over the objections of Davies, his wife testified at trial about each of the conversations she had with Davies. Davies's invocation of spousal privilege was rejected by the court. Specifically, his wife testified that Davies never denied committing the crime and he did not tell her that he believed "Jaime" to be over the age of eighteen. Davies testified at trial and admitted he had conversations with "Jaime" but insisted he never believed "Jaime" was a minor but, rather, believed that they were "role playing" in their internet conversation.

The jury found Davies guilty of one count of child enticement and two counts of attempted first-degree statutory sodomy. The court sentenced Davies to fifteen years in prison; five years for child enticement to run consecutively to the concurrent ten year sentences for each count of attempted statutory sodomy.

Doc. #10-8, at 2-7; *State v. Davies*, 330 S.W.3d 775, 781-84 (Mo. Ct. App. 2010). Petitioner appealed his conviction to the Missouri Court of Appeals.[5] The Missouri Court of Appeals amended Davies's conviction for enticement of a child to attempted enticement of a child, but affirmed the judgment and sentence in all other respects. Doc. #10-8, at 1, 7-34; *Davies*, 330 S.W.3d 775. Petitioner's application for transfer to

---

[4] It is unclear at which point Davies learned that there was in fact no minor but a decoy.

[5] On appeal, Petitioner argued (1) the trial court erred in denying his motion for acquittal because the evidence was legally insufficient to support a conviction under Count I; (2) the trial court erred in submitting a jury instruction that did not conform to the Missouri approved instruction; (3) the trial court erred in denying his motion for acquittal on Count I because the Fourth Amended Information was defective and insufficient; (4) the trial court erred in denying his motion for acquittal on Counts II and III because the evidence was insufficient; (5) the trial court erred in allowing the filing of a Fourth Amended Information; (6) the trial court erred in allowing Petitioner's wife to testify about marital communications; (7) the trial court erred in allowing Petitioner's wife to testify Petitioner never denied the crime; and (8) the trial court erred in denying Petitioner's motion for judgment of acquittal because the State did not prove there was an underage victim. Doc. #10-5; *see also* Doc. #1, at 10-11.

the Missouri Supreme Court was denied. *State v. Davies*, No. SC91508 (Mo. Mar. 1, 2011).

Petitioner also sought post-conviction relief under Missouri Supreme Court Rule 29.15. Doc. #10-12, at 6-11. Appointed counsel filed an amended motion alleging trial counsel was ineffective (1) for failing to properly object to and properly preserve for appeal the rebuttal testimony of Petitioner's ex-wife and Ryan Boggs; (2) for failing to file a motion for acquittal as to Count I because the State did not prove the necessary underage element; (3) for failing to advise Petitioner to accept the State's plea bargain offer of probation and explore the option of accepting the offer; and (4) at the sentencing stage of the trial. Doc. #10-12, at 18-38; *see also* Doc. #1, at 11. A hearing was held. Doc. #10-11. Thereafter, Petitioner's motion was denied. Doc. #10-12, at 64-70. Petitioner appealed the court's decision to the Missouri Court of Appeals, which affirmed the decision. Doc. #10-16; *State v. Davies*, 410 S.W.3d 709 (Mo. Ct. App. 2013).

In his Petition (Doc. #1) filed with this Court, Petitioner articulates seventeen grounds for relief:

(1)     Petitioner was denied his rights to due process of law and proof beyond a reasonable doubt under the Fourteenth Amendment when the trial court overruled his motion for judgment of acquittal as to Count I because there was no underage victim, and the Missouri Court of Appeals unreasonably applied the law when it amended his conviction for enticement of a child to attempted enticement of a child.

(2)     Petitioner was denied his rights to due process of law, fair trial, and proof beyond a reasonable doubt under the Fourteenth Amendment when the trial court submitted Jury Instruction No. 9 as to Count I.

(3)     Petitioner was denied his rights to due process of law, fair trial, fair notice of the charges against him, not to be convicted for crime with which he was not charged, and proof beyond a reasonable doubt under the Fifth, Sixth, and Fourteenth Amendments when the trial court overruled his motion for judgment of acquittal as to Count I because the Fourth Amended Information omitted the person enticed was underage.

(4)     Petitioner was denied his rights to due process of law, fair trial, and proof beyond a reasonable doubt under the Fourteenth Amendment when the trial court overruled his motion for judgment of acquittal as to Counts II and III.

(5)     Petitioner was denied his rights to due process and a full and fair opportunity to mount an effective defense under the Fourteenth Amendment when the trial court allowed the State to file a Fourth Amended Information during rebuttal.

(6)     Petitioner was denied the right to a fair trial under the Fourteenth Amendment when the trial court allowed his ex-wife to testify about marital communications.

(7)     Petitioner was denied the right to a fair trial under the Fourteenth Amendment when the trial court allowed his ex-wife to testify he never denied the crime to her.

(8)     Petitioner was denied the right to effective assistance of counsel under the Fourteenth Amendment when trial counsel failed to properly object to and preserve as an issue for appeal the rebuttal testimonies of Petitioner's ex-wife and Ryan Boggs.

(9)     Petitioner was denied the right to effective assistance of counsel under the Fourteenth Amendment when trial counsel failed to argue before the jury and the trial court at the close of evidence that Petitioner must be acquitted of Count I because the State failed to prove the existence of an underage victim.

(10)     Petitioner was denied the right to effective assistance of counsel under the Fourteenth Amendment at the punishment phase of the trial when trial counsel failed to have a coherent strategy to convince both the jury and the trial court to sentence Petitioner to the minimum punishment for each offense and to run each sentence concurrent.

(11)     Petitioner was denied the right to effective assistance of counsel under the Sixth and Fourteenth Amendments when trial counsel failed to hire a computer forensic expert to examine Petitioner's computers and the State's digital discovery.

(12)     Petitioner was denied the right to effective assistance of counsel under the Sixth and Fourteenth Amendments when trial counsel failed to obtain from the State the archived digital files of the chats from Yahoo! Messenger.

(13)     Petitioner was denied the right to effective assistance of counsel under the Sixth and Fourteenth Amendments when trial counsel failed to move to exclude the text version of the chat conversations because they were not the best evidence, were incomplete, and did not accurately portray the chat conversations.

(14)     Petitioner was denied the right to effective assistance of counsel under the Sixth and Fourteenth Amendments when trial counsel advised Petitioner he had a defense to the charge of enticement of a child because no underage victim existed, and as a result of this advice, Petitioner declined the State's offer of probation in exchange for a guilty plea.

(15)     Petitioner was denied the right to be free from being subjected to successive prosecution and punishment under the double jeopardy clause of the Fifth Amendment when the Missouri Court of Appeals vacated his conviction for enticement of a child and entered a conviction for a lesser included offense not instructed upon at trial.

(16)     Petitioner was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments when trial counsel, during cross-examination of a witness, opened the door for the admittance of evidence of prior misconduct.

(17)     Petitioner was denied his right to due process of the law under the Fifth and Fourteenth Amendments when the Missouri Court of Appeals vacated his conviction for enticement of a child and entered a conviction for a lesser included offense, but did not remand the case for resentencing.

## II.     **STANDARD**

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which amended 28 U.S.C. § 2254, a writ of habeas corpus shall not be issued on a claim litigated on the merits in state court unless the state court's decision either:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The "contrary to" and "unreasonable application" provisions in the first subsection have independent meaning.  The "contrary to" provision applies "if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or reached a decision contrary to Supreme Court precedent when confronting facts that were materially indistinguishable." *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011).  The "unreasonable application" clause applies "if the state court correctly identified the governing legal principle, but unreasonably applied it to the facts of the particular case." *Id.*

Section 2254(d) "limits the applicability of the AEDPA's deferential standard to claims that have been 'adjudicated on the merits' in state court." *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (citation omitted).  Federal courts are "directed to undertake only a limited and deferential review of underlying state court decisions." *Id.* (quoting *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007)).  "A federal court may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* (internal quotations and citations omitted).

## III.    DISCUSSION

### A. Exhaustion

Respondent contends Petitioner's claims in Grounds Eleven, Twelve, Thirteen, Sixteen, and Seventeen must be dismissed because Petitioner failed to properly exhaust his state remedies with regard to those claims.  Before presenting a federal habeas claim, a petitioner must properly exhaust his state remedies.  28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 843 (1999).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *Id.*  Petitioner contends his post-conviction counsel was ineffective for failing to raise and develop Grounds Eleven, Twelve, Thirteen, and Sixteen, and he has established cause for the procedural default of these claims.  Doc. #21, at 36-46, 49-50.  Petitioner set forth no argument as to why Ground Seventeen has not been defaulted.  *Id.*, at 50-51.

8

Typically, the Court addresses procedural issues, such as a statute of limitations or procedural bar, before proceeding to the merits of a claim. However, where these issues are complicated, judicial economy can dictate reaching the merits of a federal habeas claim if the merits are easily resolvable against a petitioner. *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (proceeding to the merits where the procedural default issue is difficult to resolve); *Chambers v. Bowersox*, 157 F.3d 560, 564 n.4 (8th Cir. 1998) ("[t]he simplest way to decide a case is often the best.").

At a minimum, Petitioner's claim under Ground Seventeen is likely procedurally barred, and Petitioner's claims under Grounds Eleven, Twelve, Thirteen, and Sixteen may also be procedurally barred. However, the Court will proceed to the merits of Petitioner's claims rather than tackle more difficult procedural questions raised in the parties' briefs. *See Trussell v. Bowersox*, 447 F.3d 588, 590-91 (8th Cir. 2006) (proceeding to the merits of Petitioner's claim despite concern that the Petition was not timely filed and a procedural bar existed).

## B. Alleged Court Errors

### (1) Grounds One and Fifteen: Motion for Judgment of Acquittal as to Count I, and Amended Conviction to Attempted Enticement of a Child

Petitioner argues the trial court erred in denying his motion for judgment of acquittal on Count I (enticement of a child) because there was no evidence of an underage victim, and the Missouri Court of Appeals unreasonably applied the law when it amended his conviction to attempted enticement of a child to remedy the trial court's error. Doc. #1, at 12-14, 47-49.

The Missouri Court of Appeals found "[t]here is no factual support anywhere in the record from which the jury could have" found Petitioner knew or was aware that the person he solicited was less than fifteen years old. *Davies*, 330 S.W.3d at 786. Thus, "there was insufficient evidence to support convicting Davies of enticement of a child under the statute and the instructions submitted to the jury." *Id.* The Missouri Court of Appeals found this error did not vacate Petitioner's conviction or demand his discharge because there was sufficient evidence to convict Petitioner of attempted enticement of a child, a lesser included offense. *Id.* at 786-87. Specifically, the jury found, in Counts II

and III, Petitioner contacted the intended victim and went to their agreed upon destination point, which constituted a substantial step toward the offense of statutory sodomy. *Id.* at 787.

> Because the jury found Davies committed the actions necessary to constitute a substantial step toward actually committing statutory sodomy by arranging a meeting with the victim and arriving at the proposed destination, this necessarily means his actions were also sufficient to support a finding that he committed a substantial step to corroborate his attempt to entice a child.

*Id.* The Missouri Court of Appeals, when reading the instructions together, concluded the "failure to explicitly require the jury to find a substantial step in connection with the attempted enticement of a child charge was not prejudicial." *Id.*

To remedy the trial court's error, the Missouri Court of Appeals reversed Petitioner's conviction for enticement of a child, and entered a conviction for the lesser included offense of attempted enticement of a child. *Id.* at 786-88, 798. The appellate court noted Petitioner could have been convicted of that crime based upon the facts presented at trial, the instructions given to the jury, and the jury's verdicts. *Id.* at 798 (citation omitted). The Missouri Court of Appeals also found the range of punishment for the crimes of enticement of a child and attempted enticement of a child were the same. *Id.*

Petitioner contends attempted enticement of a child cannot be a lesser included offense of enticement of a child because "it is impossible for the greater offense to occur without the existence of an underage child," and the two offenses have distinct elements. Doc. #1, at 13. Petitioner also alleges the Missouri Court of Appeals erred in reducing his conviction because there was a reasonable probability Petitioner would not have been convicted of attempted enticement of a child. *Id.* at 48. This decision, according to Petitioner, violates Supreme Court precedent applying the double jeopardy clause of the Fifth Amendment. *Id.* at 49.

As set forth *supra*, section II, the Court's review is limited to whether the decision issued by the Missouri Court of Appeals was "contrary to, or involved an unreasonable application of, clearly established federal law…." 28 U.S.C. § 2254(d). The Court finds the state appellate court's resolution of Petitioner's insufficient evidence claim was

neither based upon an unreasonable determination of the facts in light of the evidence, nor was it an unreasonable application of clearly established federal law.

The appellate court correctly identified the governing legal principles and reasonably applied those principles to the facts before it. First, the Missouri Court of Appeals found the evidence established the individual with which Petitioner was talking and tried to meet was over the age of fifteen; thus, Petitioner could not be convicted of enticement of a child. *Davies*, 330 S.W.3d at 785-86.

Second, the Missouri Court of Appeals determined that although the specific instruction pertaining to attempted enticement of a child was not given to the jury, the evidence presented at trial and the other jury instructions given to the jury showed it was not improper to convict him of attempted enticement of a child. *Id.* at 787-88. "The failure to give a lesser included offense instruction in a noncapital case rarely, if ever, presents a constitutional question." *Pitts v. Lockhart*, 911 F.2d 109, 112 (8th Cir. 1990).[6]

Third, the decision to amend Petitioner's conviction to the lesser included offense of attempted enticement of a child was not contrary to or an unreasonably application of federal law. The Missouri legislature has clearly indicated (and Petitioner concedes) attempt is always a lesser included offense of the completed offense. Mo. Rev. Stat. § 556.046.1; Doc. #21, at 21.

Finally, the decision by the Missouri Court of Appeals to vacate Petitioner's conviction for enticement of a child and enter a conviction for attempted enticement of a child does not violate the double jeopardy clause. Petitioner was never tried on an offense that included a jeopardy-barred element. Rather, the appellate court found the evidence at trial required a finding that Petitioner was only guilty of attempted enticement of a child, the lesser included offense. For these reasons, Grounds One and Fifteen are denied.

---

[6] Further, "[t]he Supreme Court has never held that due process requires the giving of lesser-included offense instructions in noncapital cases." *Dickerson v. Dormire*, 2 Fed. App'x 695, 696 (8th Cir. 2001).

## (2) Ground Two:  Jury Instruction No. 9

Petitioner argues the verdict director submitted to the jury on Count I (enticement of a child) was defective because it did not conform to the model instruction.  Doc. #1, at 14-15.  The applicable instruction is as follows:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that between June 6, 2006 and June 12, 2006, in the County of Buchanan, State of Missouri, the defendant solicited a person defendant believed to be less than fifteen years of age, by suggesting that they meet in person, and
>
> Second, that the defendant did so for the purpose of engaging in sexual contact with a person defendant believed to be less than fifteen years of age, and
>
> Third, that at the time, the defendant believed that the person he was chatting with via the internet was less than fifteen years of age, and
>
> Fourth, that the defendant knew or was aware that the person defendant solicited via the internet was less than fifteen years of age, and
>
> Fifth, that the defendant was twenty-one years of age or older, then you will find the defendant guilty under Count I of enticement of a child.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt that each and all of these propositions, you must find the defendant not guilty of that offense.

Doc. #10-3, at 27.  Petitioner argues the fourth paragraph was not necessary, and "sexual contact" in the second paragraph, should have been "sexual conduct."  Doc. #1, at 15.

The Missouri Court of Appeals found the definition of "sexual conduct" includes "sexual contact."  Because the instruction used a narrower term (than the term in the model instruction) to describe Petitioner's alleged acts, the appellate court found there was no manifest injustice.  *Davies*, 330 S.W.3d at 788-89.  Further, because Petitioner's conviction was amended to attempted enticement of a child, the Missouri Court of Appeals found it was unnecessary for the jury to determine whether the victim knew or was aware that the victim was under the age of fifteen.  *Id.* at 789.  The Court finds the

decision issued by the Missouri Court of Appeals pertaining to Instruction No. 9 was not contrary to or an unreasonable application of law.  Accordingly, Ground Two is denied.

### (3) Ground Three:  Omission of Statutory Element in Fourth Amended Information

Petitioner contends the Fourth Amended Information omitted the statutory element that the person enticed was underage.  Doc. #1, at 16-17.  Rather, the Fourth Amended Information charged Petitioner with soliciting sexual contact with a person who Petitioner believed was less than fifteen years old.  As set forth above, the Missouri Court of Appeals amended Petitioner's conviction to attempted enticement of a child. *Davies*, 330 S.W.3d at 798.  Petitioner argues he was not given notice that he could be found guilty of attempted enticement of a child because he was not charged with said crime in the Fourth Amended Information.  For the same reasons set forth *supra*, section III(B)(1), the Court finds the Missouri Court of Appeals's decision was not contrary to or an unreasonable application of law.  Ground Three is denied.

### (4) Ground Four:  Motion for Judgment of Acquittal on Counts II and III

Petitioner claims the trial court erred in denying his motion for judgment of acquittal on Counts II and III (attempted statutory sodomy) because there was insufficient evidence.  Doc. #1, at 17-18.  Petitioner maintains there was "no evidence from which a reasonable jury c[ould] find that petitioner had specific intent to commit the charged acts of deviate sexual intercourse."  Doc. #21, at 25.  He argues the Missouri Court of Appeals made an unreasonable determination of the facts when it denied this argument on appeal.

The Missouri Court of Appeals determined the evidence adduced at trial was sufficient to convict Petitioner on Counts II and III.  *Davies*, 330 S.W.3d at 791-92.  The evidence showed Petitioner arranged to meet "Jaime" at a cemetery; he admitted to changing his online profile hoping "Jaime" would meet him if he claimed to be seventeen years old; prior to meeting "Jaime," Petitioner described how he would teach and show her how to have sex; he explained in graphic terms how he would perform oral sex on her, and he would teach her how to perform oral sex on him; Petitioner switched to his other online profile to encourage "Jaime" to perform sex acts with

13

Petitioner; and he arrived at the cemetery a half hour before their arranged meeting time in the car he described to "Jaime." *Id.* As aptly stated by the Missouri Court of Appeals, "a reasonable jury could have concluded beyond a reasonable doubt that Davies had the specific purpose to commit two separate acts of statutory sodomy." *Id.* at 792. The decision issued by the Missouri Court of Appeals that the trial court failed to grant his motion for judgment of acquittal on Counts II and III was not contrary to or an unreasonable application of law, and was based upon a reasonable determination of the facts in light of the evidence presented at trial. Thus, Ground Four is denied.

### (5) Ground Five: Filing of Fourth Amended Information During Rebuttal

Petitioner argues the Fourth Amended Information, which was filed during rebuttal, charged a different offense with regard to Counts II and III. Doc. #1, at 19-22. Before the Fourth Amended Information was filed, Petitioner "was charged with two identical counts of attempted statutory sodomy alleging that Davies intended to engage in 'deviate sexual intercourse' with the intended victim." *Davies*, 330 S.W.3d at 793. The two counts were identical. *Id.* As the Missouri Court of Appeals noted, "[n]either prior to or during trial did Davies raise any objection to the sufficiency of the charges under these two counts." *Id.*

After Petitioner rested, the trial court pointed out the identical charges for Counts II and III. *Id.*; Doc. #9-5, a123-28. The State requested and was granted leave to amend the information to distinguish the two charges. *Id.*; Doc. #9-6, at 158-59; Doc. #9-7, at 11-12. Thereafter, Count II specified the intended conduct was "Davies placing his mouth on the victim's vagina," and Count III identified the intended conduct was "Davies placing his penis in the victim's mouth." *Id.* Petitioner claims these charges were additional and/or different than the prior charges, and his substantial rights were infringed.

The Missouri Court of Appeals addressed this issue and found the "elements of the charges prior to and after the amendment were the same." *Id.* at 794. "All that was amended was the manner in which the State was alleging Davies violated the statute." *Id.* Simply, the charges were "amended to specify the method by which the offenses were committed," and "no additional or different offense was charge." *Id.* The Missouri

Court of Appeals also determined Petitioner had not demonstrated he was prejudiced by the amendment. *Id.* Further, the evidence at trial showed Petitioner discussed the giving and receiving of oral sex with "Jaime," and Petitioner admitted going to the cemetery to have both anal and oral sex with "Jaime." Thus, the amendment simply conformed to the evidence presented. For all of these reasons, the Court finds the decision issued by the Missouri Court of Appeals regarding the filing of the Fourth Amended Information was not contrary to or an unreasonable application of law, and was based upon a reasonable determination of the facts in light of the evidence presented at trial. Ground Five is denied.

### (6) Grounds Six and Seven: Testimonies of Ex-Wife & Ryan Boggs

In Ground Six, Petitioner alleges he was denied the right to a fundamentally fair trial when the trial court allowed his ex-wife, Karen (Davies) Taylor,[7] to testify regarding privileged marital communications. Doc. #1, at 22-23. Petitioner raised this ground on direct appeal, and the Missouri Court of Appeals denied it. The appellate court found Petitioner failed to establish his communications with Taylor were private for the marital privilege to apply. *Davies*, 330 S.W.3d at 795 (noting communications between husband and wife are deemed confidential when exchanged in private) (citations omitted).

> Davies never testified that he was alone when he made the phone calls to his wife from the booking station, and there was evidence to suggest the contrary. His wife testified that the call she received from her husband at the booking station was from a number she did not recognize, which contradicted Davies's argument at the suppression hearing that he made the call from his personal cell phone and supported the State's argument that the call was made from the booking station with third parties present.

*Id.* Because Petitioner did not establish the communications with Taylor were private, the Missouri Court of Appeals found Petitioner's argument that said communications were privileged failed. *Id.*

---

[7] Petitioner represents to the Court that the communications between him and his now ex-wife took place while they were married. Doc. #1, at 22 n.2. Karen Davies is now known as Karen Taylor, and the Court will identify her as Taylor to avoid confusion.

In Ground Seven, Petitioner maintains the trial court erred in allowing Taylor to testify Petitioner never denied the crime to her. Doc. #1, at 23-25. This argument was addressed by the Missouri Court of Appeals. *Davies*, 330 S.W.3d at 795-98. The appellate court concluded the admission of Taylor's testimony that Petitioner never denied committing the crime was error. *Id.* at 797. But the Missouri Court of Appeals determined the error was not prejudicial because the testimony was cumulative of other evidence admitted during trial. *Id.* at 797-98. In particular, Petitioner's brother-in-law, Ryan Boggs, testified he overheard a conversation between Petitioner and Taylor during which Petitioner stated the victim was thirteen years old, which was in response to Taylor's statement that Petitioner was caught with a twelve year old. This evidence was admitted without objection. *Id.* at 797; Doc. #9-7, at 24.

With regard to both grounds, the Court concludes the decision issued by the Missouri Court of Appeals with regard to the admission of the testimonies of Taylor and Boggs during rebuttal was not contrary to or an unreasonable application of law, and was based upon a reasonable determination of the facts in light of the evidence presented at trial. Grounds Six and Seven are denied.

### (7) Ground Seventeen: Failure to Remand Case for Resentencing[8]

Petitioner alleges he was denied his rights to due process when the Missouri Court of Appeals vacated his conviction for enticement of a child and entered a conviction for a lesser included offense but did not remand the case for resentencing. Doc. #1, at 52-54. Petitioner concedes the offense of attempted enticement of a child has "the same punishment range as enticement of a child." Doc. #21, at 51. Nonetheless, Petitioner contends the Missouri Court of Appeals's decision not to remand was an unreasonable determination of federal law because Petitioner was sentenced to a crime for which he was not convicted. Doc. #1, at 53. He argues the Missouri Court of Appeals "deprived [him] of a lesser sentence of imprisonment." Doc. #21, at 51; *see also* Doc. #1, at 53.

---

[8] As set forth *supra*, section III(A), this ground for relief was not presented to a state court and is in all likelihood procedurally barred. However, the Court will address the merits of this claim.

At the conclusion of the trial, the jury chose to assess the minimum sentence for Petitioner's conviction of enticement of a child: five years. Doc. #10-3, at 53. As explained by the Missouri Court of Appeals, the minimum sentence for attempted enticement of a child is the same. *Davies*, 330 S.W.3d at 798. Thus, a jury could not recommend a lesser sentence, and the Court could not have imposed a lesser sentence. The Court finds the Missouri Court of Appeals's decision not to remand the matter for resentencing was not contrary to or an unreasonable application of law. Accordingly, Grounds Seventeen is denied.

## C. Alleged Ineffective Assistance of Counsel

Issues of ineffectiveness of trial counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quoting *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. *Id.* at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lawrence*, 961 F.2d at 115 (quoting *Strickland*, 466 U.S. at 694).

*Id.* Failure to satisfy both prongs is fatal to the claim. *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) (stating there is no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); *see also DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). "An ineffective assistance of counsel claim is a mixed question of law and fact." *McReynolds v. Kemna*, 208 F.3d 721, 723 (8th Cir. 2000). The Court concludes a hearing is not

necessary because Petitioner's claims can be evaluated based on the Record that has been developed.

### (1) Ground Eight:  Failing to Object to the Testimonies of Taylor & Boggs

Petitioner argues he was denied his right to effective assistance of counsel when his trial counsel failed to object to and preserve an issue for appeal the testimonies of Taylor and Boggs during rebuttal.  Doc. #1, at 26-30.  Petitioner raised these issues during his post-conviction proceedings in the state courts.  The Missouri Court of Appeals addressed these particular arguments and denied Petitioner's request for relief. Doc. #10-16, at 5-11.

### (a) Taylor's Testimony

The Missouri Court of Appeals noted trial counsel filed a pretrial motion in limine to exclude statements Petitioner made to Taylor on phone calls based upon the marital privilege statute.  *Id.* at 6.  The trial court overruled the motion, citing the underage victim exception to section 546.260 of the Missouri Revised Statutes.  *Id.*  Then, at trial, Taylor testified about statements Petitioner made to her after his arrest, including a statement that the minor was thirteen years old.  *Id.*  Trial counsel did not object to this testimony.

The Missouri Court of Appeals held Petitioner failed to present any evidence in his post-conviction motion tending to prove the phone conversations with Taylor were conducted in private.  *Id.* at 8.  "In fact, Davies testified by deposition at the evidentiary hearing that a police officer was present in the room with him when he made each telephone call to Taylor."  *Id.*  Because Petitioner failed to present evidence of these communications being conducted in private, the Missouri Court of Appeals found Petitioner "failed to prove how our decision on direct appeal would have been different absent trial counsel's alleged deficient performance."  *Id.*  Thus, the Missouri Court of Appeals determined trial counsel's performance in failing to object to Taylor's testimony or otherwise make a record establishing Petitioner's conversations with Taylor were conducted in private was not ineffective.  *Id.*

### (b) Boggs's Testimony

Boggs, who was called during the State's rebuttal, testified about a conversation he overheard between Petitioner and Taylor during which Petitioner indicates the victim was thirteen. The Missouri Court of Appeals denied Petitioner's claim that his trial counsel was ineffective for failing to object to Boggs's testimony. *Id.* at 10-11. "The communication between Taylor and Davies to which Boggs testified was not conducted in private and, therefore, the content of the communication was not privileged." *Id.* at 10. The Missouri Court of Appeals also noted Petitioner's statement to Taylor "was plainly a relevant admission that tended to prove his guilt." *Id.* Thus, the Missouri Court of Appeals determined Petitioner's trial counsel was not ineffective in failing to object to Boggs's testimony.

Again, the Court must determine whether the decision of the Missouri Court of Appeals is either contrary to or involved an unreasonable application of clearly established law, or was "based on" an unreasonable determination of fact. 28 U.S.C. § 2254(d). The Court concludes the Missouri Court of Appeals applied the proper standard. That is, the Missouri Court of Appeals analyzed whether (1) trial counsel's performance was deficient, and (2) this deficiency prejudiced Petitioner. Doc. #10-16, at 5 (quoting *Strickland*, 466 U.S. at 687-94). Further, the Court concludes that the decision of the Missouri Court of Appeals was not based on an unreasonable determination of fact. Ground Eight is denied.

### (2) Ground Nine: Failing to Argue Acquittal Because State Did Not Prove Existence of Underage Victim

Petitioner argues he was denied his right to effective assistance of counsel when trial counsel failed to argue before the jury and the trial court at the close of evidence that Petitioner must be acquitted of Count I because the State failed to prove the existence of an underage victim. Doc. #1, at 30-33. This same argument was presented to the Missouri Court of Appeals, and was denied. Doc. #10-16, at 11-13.

First, the Missouri Court of Appeals noted trial counsel, during closing argument, referred the jury to Instruction No. 9, and told the jury there was no one under the age of fifteen. *Id.* at 13-14. Trial counsel told the jury the "victim" was a decoy. *Id.* at 14.

Accordingly, the Missouri Court of Appeals found Petitioner's trial counsel argued the necessary underage victim element had not been established. *Id.* As such, Petitioner's counsel could not be ineffective for failing to make sure an argument.

Second, the Missouri Court of Appeals noted Petitioner's trial counsel moved for judgment of acquittal on Count I but did not raise the specific argument there was no child under the age of fifteen. *Id.* at 11. Petitioner maintained his counsel was deficient in failing to raise the argument to the trial court. The appellate court stated the following:

> We disagree with Davies's assumption that the outcome of the proceeding would have been different absent counsel's error. A trial court is required to instruct the jury on a lesser included offense if the evidence shows the lack of an essential element of the greater offense, thereby providing a basis for a verdict acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. Thus, if trial counsel had raised the specific argument that the underage victim element had not been established, the trial court most likely would have recognized the evidentiary insufficiency and submitted the lesser included offense of attempted enticement of a child. The motion court found that the circuit court could have taken that course of action and, consistent with this Court's opinion on direct appeal, that would have been the legally correct course of action for the circuit to take.

*Id.* at 12 (internal quotations and citations omitted). Further, the jury made all the requisite factual findings to support a conviction for attempted enticement of a child. Thus, if the circuit court had instructed the jury on the offense of attempted enticement of a child, "there is no reasonable probability" the jury's decision would have been different. *Id.* at 12-13. For these reasons, the Missouri Court of Appeals determined Petitioner failed to prove he was prejudiced by his counsel's failure. *Id.* at 13.[9]

Based upon its review of the record before it and the relevant law, the Court concludes the Missouri Court of Appeals applied the proper standard and correctly analyzed Petitioner's claims. The Court finds the Missouri Court of Appeals's decision was not contrary to or involved an unreasonable application of law and was not based upon an unreasonable determination of fact. Furthermore, Petitioner has not shown his

---

[9] The Missouri Court of Appeals also found Petitioner failed to "overcome the strong presumption that trial counsel had a strategic reason for failing to argue to the circuit court that the underage victim element had not been established." Doc. #10-16, at 13.

counsel's performance, assuming it was so deficient as to fall below the objective standard of reasonable competence, prejudiced his defense. For these reasons, Ground Nine is denied.

### (3) Ground Ten: Sentencing

Petitioner alleges his trial counsel was ineffective by failing to have a "coherent strategy to convince both the jury and trial court to sentence Mr. Davies to the minimum punishment for each offense and to run each sentence concurrently to each other." Doc. #1, at 34-36. This specific argument was also addressed by the Missouri Court of Appeals. Doc. #10-16, at 14-17.

During the sentencing phase, trial counsel called Petitioner's mother, father, aunt, and brother as character witnesses. Doc. #9-8, at 33-48; *see also* Doc. #10-16, at 15. During his closing argument of the penalty phase, Petitioner's counsel asked the jury to "exercise mercy" when sentencing Petitioner, consider his almost thirty years of model behavior, and give Petitioner the opportunity to see his son and family. Doc. #9-8, at 50-51; Doc. #10-16, at 15. After deliberating, the jury recommended Petitioner be sentenced to five years' imprisonment on Count I, and ten years' imprisonment on both Counts II and III. Doc. #9-8, at 53.[10]

The Missouri Court of Appeals held trial counsel did not render ineffective assistance during the sentencing phase.

> [I]t is apparent from the record that trial counsel was prepared for the penalty phase and sentencing hearing, and that counsel followed a strategy of attempting to persuade the jury that Davies's good qualities and otherwise clean criminal history warranted the imposition of a short sentence. In light of this record, we cannot conclude the motion court clearly erred in concluding that trial counsel's strategy was effective and reasonable.

Doc. #10-16, at 16. The Missouri Court of Appeals further determined trial counsel was not ineffective for failing to advise the court that probation was not possible on Count I. *Id.* at 16-17. In particular, the Missouri Court of Appeals noted "it is within the trial court's discretion to exclude parole eligibility arguments during the penalty phase." *Id.*

---

[10] The minimum sentence on each count was five years' imprisonment. Doc. #10-16, at 16.

at 16.  Thus, it is possible such an argument by trial counsel would have been excluded.  *Id.*

Based upon the relevant law and its review of the record before it, the Court concludes the Missouri Court of Appeals applied the proper standard and correctly analyzed Petitioner's claims.  The Court finds the Missouri Court of Appeals's decision was not contrary to or involved an unreasonable application of law and was not based upon an unreasonable determination of fact.  The Court also concludes Petitioner has not shown his counsel's performance, assuming it was so deficient as to fall below the objective standard of reasonable competence, prejudiced his defense.  Accordingly, Ground Ten is denied.

### (4) Ground Eleven:  Failing to Hire Computer Forensic Expert[11]

Petitioner maintains he was denied effective assistance of counsel because his trial counsel failed to hire a computer forensic expert to examine his computers and the State's digital discovery.  Doc. #1, at 36-40.  According to Petitioner, "[a] forensic expert could have examined the chats provided in discovery to determine whether they were an accurate representation of what actually took place."  *Id.* at 37.[12]  Petitioner, however, has not shown his trial counsel's performance was "so deficient as to fall below an objective standard of reasonable competence.  *Nave*, 62 F.3d at 1035.

Evidence at trial showed the chats provided in discovery were accurate representations of what took place between Petitioner and "Jaime."  Doc. #9-3, at 59-63; Doc. #9-4, at 37-38.  Copies of the chats were shown to Petitioner, and he initialed copies of the chats, agreeing those were his chats with "Jaime."  Doc. #9-4, at 52-54, 126-128.  Based upon the evidence presented at trial, the alleged failure by trial counsel to hire a computer forensic evidence was not deficient performance.  And even if trial

---

[11] Petitioner concedes this ground was not raised in state court, but he maintains it was not asserted due to post-conviction counsel's ineffective assistance.  Doc. #1, at 40.  Although it appears Petitioner failed to exhaust this claim, the Court will address the merits of the claim.

[12] Trial counsel designated an expert witness to demonstrate navigation of Yahoo!, instant messaging, and chat rooms.  Doc. #10-2, at 6, 21, 26.  Petitioner claims his attorney should have also retained an expert to examine Petitioner's computer or law enforcement's computers.  Doc. #21, at 37.

counsel's performance had been deficient, Petitioner has not established – other than an unsupported argument the outcome of the trial would have been different had his attorney hired a computer forensic expert – prejudice.  For these reasons, Ground Eleven is denied.

### (5) Ground Twelve:  Failing to Obtain Archived Digital Files[13]

Petitioner argues he was denied effective assistance of counsel when trial counsel failed to obtain from the State the archived digital files of the chats from Yahoo! Messenger.  Doc. #1, at 40-42.  He maintains the "archived files would have presented a complete picture of the chats and supported Mr. Davies's defense that he did not believe he was chatting with an underage person but engaging in fantasy role playing."  Doc. #1, at 41.  As with Ground Eleven, Petitioner has not shown his trial counsel's performance was "so deficient as to fall below an objective standard of reasonable competence.  *Nave*, 62 F.3d at 1035.  Based upon the evidence at trial relating to the chats between Petitioner and Jaime, the alleged failure by trial counsel to obtain archived files of the chats did not constitute deficient performance.  Further, even if Petitioner could establish his counsel's performance was deficient, Petitioner failed to show he was prejudiced by trial counsel's deficient performance.  Accordingly, Ground Twelve is denied.

### (6) Ground Thirteen:  Failing to Move to Exclude Text Versions of Chats[14]

Petitioner contends his trial counsel was ineffective for failing to move to exclude the text version of the chat conversations "because they were not the best evidence, were incomplete and did not accurately portray the chat conversations."  Doc. #1, at 42. Petitioner's arguments are based upon speculation; there is no evidence that the chats

---

[13] Petitioner concedes this ground was not raised in state court, but he maintains it was not asserted due to post-conviction counsel's ineffective assistance.  Doc. #1, at 42. Although it appears Petitioner failed to exhaust this claim, the Court will address the merits of the claim.

[14] Petitioner concedes this ground was not raised in state court, but he maintains it was not asserted due to post-conviction counsel's ineffective assistance.  Doc. #1, at 43. Although it appears Petitioner failed to exhaust this claim, the Court will address the merits of the claim.

were incomplete or were inaccurate. Instead, the evidence at trial was the chats presented to the jury were accurate depictions of the conversations between Petitioner and "Jaime." Doc. #9-3, at 59-63; Doc. #9-4, at 37-38. For this reason and the reasons set forth in Grounds Eleven and Twelve, Petitioner has not established his trial counsel's performance was deficient. Even if Petitioner could show his trial counsel was deficient, he failed to establish prejudice resulting from his trial counsel's performance. For these reasons, Ground Thirteen is denied.

### (7) Ground Fourteen:  Advice Regarding Defense to Charge

Petitioner alleges that before he was charged with attempted sodomy, the State offered to allow him to enter a guilty plea to an unspecified charge in exchange for a recommendation of probation. Doc. #1, at 44. Petitioner contends his trial counsel was ineffective when he advised Petitioner "he had a defense to the charge of enticement of [a] child because no underage victim existed [and] as a result of this advice Mr. Davies declined [the] state's offer of probation in exchange for a guilty plea." Doc. #1, at 44. Petitioner claims this argument was not raised in state court. Doc. #1, at 46. The motion court addressed this issue when it denied Petitioner's post-conviction motion, although it appears the issue was not raised on appeal. The motion court stated the following:

> Movant's trial counsel testified that he told Movant about the plea offer, which did include probation. He further explained to Movant that rejecting the plea offer would result in increased charges, with a minimum sentence of 5 years, without the possibility of probation or parole. Movant asserted his belief that he did not believe the person with whom he was chatting was less than 15.
>
> In addition, the jury recommended the minimum sentence on Count I and 10 years each on Counts II and III. The Court imposed the jury recommended sentences, ordering Counts II and III to be served consecutive to Count I, but concurrent to each other. Such sentences were not the bare minimum, but are clearly indicative of the effectiveness of the arguments presented by Movant's counsel. As such, they cannot be said to indicate a reasonable probability that the outcome would have been different. This claim is denied.

Doc. #10-12, at 69-70. Based upon the relevant law and its review of the record before it, the Court concludes the motion court applied the proper standard and correctly analyzed Petitioner's claim. The Court finds the motion court's decision was not contrary to or involved an unreasonable application of law and was not based upon an unreasonable determination of fact. The Court also concludes Petitioner has not shown his counsel's performance, assuming it was so deficient as to fall below the objective standard of reasonable competence, prejudiced his defense. Accordingly, Ground Fourteen is denied.

### (8) Ground Sixteen: Opening the Door to Evidence of Prior Misconduct[15]

Prior to trial, Petitioner's counsel filed a motion in limine seeking to prevent the introduction of evidence of Petitioner's prior sexual conversations with a sixteen-year-old girl. Doc. #10-3, at 10-11. The motion was granted. Doc. #9-2, at 14. During cross-examination of a detective, Petitioner's counsel asked if the detective found child pornography on Petitioner's computers. Doc. #9-5, at 89-90. The detective replied he had not. *Id.* at 90. The State then requested permission to use Petitioner's admissions about an internet chat with a sixteen-year-old girl "since [Petitioner's counsel] got to get into the child porn to show that he had no intent of meeting an underage person." Doc. 9-5, at 97. The State argued Petitioner "open[ed] the door to the fact that he's been chatting with a 16-year-old also, to show his intent to chat with younger females on the Internet." *Id.* Over Petitioner's counsel's objections, the trial court allowed the State to introduce the evidence. *Id.* at 97-98.

The state then recalled a witness, and evidence of Petitioner's statement he had a sexual conversation with a sixteen-year-old girl was admitted. *Id.* at 119-20. Petitioner's counsel called several character witnesses, and the State cross-examined those character witnesses about Petitioner's internet chat with the sixteen-year-old girl. *Id.* at 131-32, 134, 137, 145-46. Petitioner argues he was denied effective assistance of

---

[15] Petitioner concedes this ground was not raised in state court, but he maintains it was not asserted due to post-conviction counsel's ineffective assistance. Doc. #1, at 50. Although it appears Petitioner failed to exhaust this claim, the Court will address the merits of the claim.

counsel when his trial counsel "opened the door for the admittance of highly prejudicial evidence of prior misconduct." Doc. #1, at 50.

Petitioner's counsel's trial strategy, as evident from his closing argument, was based, in part, on showing the lack of child pornography made him less likely to have committed the crimes for which he was charged.

> And what did the FBI say? He didn't fit the profile. They've got the wrong guy. The FBI says that 80 to 90 percent of the people who do these kinds of crimes have child porn on their computer. Jeff Davies didn't – they couldn't find any kind of porn on his computer, let alone child porn.
>
> Let me tell you the reason – if they had found one speck of child porn, you would have heard about it from that stand. You would have seen it in these fancy projections. If they had found any porn at all, you would have seen it up there. You didn't, because it didn't exist.
>
> What did he say? He said 80 to 90 – he said that there's only a 10- to 20-percent chance that somebody who didn't have this kind of porn didn't fit the profile. What I'm suggesting to you is on that single fact alone, the FBI is telling you there's only a 10- to 20-percent chance that he could have done this. A 10- to 20-percent chance and they want you to throw him away forever.

Doc. #9-7, at 141-142. While some may question trial counsel's strategy, Petitioner has not shown his trial counsel's performance was "so deficient as to fall below an objective standard of reasonable competence. *Nave*, 62 F.3d at 1035. Based upon the evidence at trial, the questioning about child pornography being on Petitioner' computer did not constitute deficient performance. Further, even if Petitioner could establish his counsel's performance was deficient, Petitioner failed to show he was prejudiced by trial counsel's deficient performance. For these reasons, Ground Sixteen is denied.

## IV.   CERTIFICATE OF APPEALABILITY

The Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

## V. CONCLUSION

For these reasons, Petitioner's request for habeas corpus relief pursuant to 28 U.S.C. § 2254 is denied, the issuance of a certificate of appealability is denied, and this matter is dismissed with prejudice.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE:  June 19, 2017                                   UNITED STATES DISTRICT COURT